Case 4:22-cv-04463   Document 23   Filed on 12/02/24 in TXSD   Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
December 02, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID E. CHAMBERS, | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-4463 |
| | § | |
| INTERGRAPH CORPORATION, | § | |
| | § | |
| *Defendant.* | § | |

### ORDER

Pending before the Court is Defendant Intergraph Corporation's ("Defendant" or "Intergraph") Motion for Summary Judgment. (Doc. No. 18). Plaintiff David Chamber's ("Plaintiff" or "Chambers") filed a response in opposition. (Doc. No. 21). Defendant replied. (Doc. No. 22). After considering the applicable law, motion, response, reply, and summary judgment evidence, the Court hereby GRANTS in part and DENIES in part Defendant's Motion. (Doc. No. 18).

### I. Background

This is a dispute involving an alleged miscalculation of a sales commission. Intergraph and Hexagon EAM Holdings, LLC ("Hexagon") are related companies.[1] Intergraph hired Chambers as Senior Account Manager in March of 2022. (Doc. No. 18-4 at 2).[2] As Senior Account Manager, Chambers sold software to new and existing clients of Hexagon. (Doc. No. 21-1 at 2). In return,

---

[1] Surprisingly, the parties dispute whether Intergraph is the parent company of Hexagon or a subsidiary of Hexagon. (Doc. No. 18 at 5; Doc. No. 21 at 1).
[2] Plaintiff's employment contract lists Hexagon as the employer, yet the parties agree that Intergraph hired Chambers. (Doc. No. 18-4). Defendant does not question whether Chambers has sued the correct entity, even though it alleges it is Hexagon's parent company. Thus, the Court will proceed on the assumption that Intergraph was Chambers's employer at all relevant times.

1

Chambers received a base salary, plus certain commissions and bonuses. (Doc. No. 18-5; Doc. No. 18-3 at 5; Doc. No. 21-1 at 2).

The parties agree that Plaintiff and Defendant entered into a Compensation and Bonus Plan (the "Plan"). (Doc. No. 18-5; Doc. No. 21-1 at 2). The parties also agree that the Plan is a valid, enforceable contract. (Doc. No. 21 at 4; Doc. No. 18 at 19–20). By its terms, the Plan incorporates the General Plan Terms Document (the "Plan's Terms") and the Sales Terms and Conditions Document (the "Sales Terms and Conditions"). (Doc. No. 18-5). Section 1.2 of the Sales Terms and Conditions provides:

> For SaaS Transactions, the following additional criteria must be met in order for such Transaction to be Booked:
>
> (i) For New Client/New Logo, Existing Client - New Product, Hosting to SaaS, and On-Prem to SaaS; the SaaS subscription term must be 12 months or greater
>
> (ii) Any SaaS subscription fees must be incremental to the Customer's highest existing subscription fee run rate, i.e. renewals at the same amount as the original Booking are excluded. The existing subscription fee will be reviewed based on the highest ACV over the prior 24 months to determine the incremental amount.[3]

(Doc. No. 18-9 at 4). Section 1.12 of the Sales Terms and Conditions states:

> Transactions where the Participant actively closes the sale of a new SaaS Product into a Named Account or Territory in which the Company receives recurring subscription fees, meeting the criteria below, will be eligible for Quota Credit equal to the average ACV times a factor, if applicable, based on the length of contract. For example, a SaaS agreement that commits the Customer to a TCV of $900,000

---

[3] The Plan's Terms define the relevant terms as follows:
  SaaS means Software as a Service;
  Transaction is a "Product sale . . . to a Customer that a Participant is actively involved in closing;"
  Booked requires that a "Transaction is considered Booked only when all criteria and documentation required by the Company's revenue recognition policies have been satisfied;" and
  ACV means the Annual Contract Value, which is "the total amount of committed recurring subscription fees value, excluding any one-time fees, as well as any nonstandard recurring third-party incremental fees associated with the Transaction, divided by the number of years in the committed subscription term." For example, the ACV for a 4-year Transaction with a total fee of $1,000,000 is $250,000.
  TCV means the Total Contract Revenue, which is "[t]he total of all recurring and one-time charges for Products in a Customer contract that the Customer is committing to pay over the life of the contract including, but not limited to, fees for software, M&S Consulting Services, Hosting and onboarding."

USD in recurring fees over the entire committed three-year term will have an ACV of $300,000 USD ($900,000/3). Commission Payments for SaaS transactions will be calculated in the following manner unless otherwise denoted in the Plan Specifics document as being paid as ACV only with no multipliers. The multipliers can vary by Plan; the amounts below are for example purposes only. The Plan Specifics document will denote the multipliers applicable for each Participants' Plan.

(*Id.* at 7).

The parties disagree as to whether Intergraph paid Chambers the correct amount in commission on a June 2022 sale. Plaintiff alleges that he closed a sale, on behalf of Hexagon, with Hilcorp Energy Company ("Hilcorp") on June 30, 2022 (the "Sale"). (Doc. No. 21-1 at 2; Doc. No. 18-6). After Chambers closed the sale, Defendant paid Plaintiff a commission of $24,597.54. (Doc. No. 21-1 at 3). Plaintiff claims Defendant severely underpaid his commission—claiming a deficiency of $196,027 (for an alleged total commission of $220,625). (Doc. No. 21-1 at 3).

Chambers initiated this lawsuit in Texas state court alleging two causes of action: breach of contract and unjust enrichment/quantum meruit. (Doc. No. 1-1). Defendant removed the suit to this Court. Defendant now moves for summary judgment, contending that: (1) Defendant did not breach the Plan and Plaintiff has suffered no damages, so his breach of contract claim fails as a matter of law; and (2) Plaintiff's unjust enrichment claim also fails as a matter of law because a valid, enforceable contract controls the subject matter of Chambers's claim. (Doc. No. 18).

The crux of the dispute is whether this Hilcorp sale constitutes a new contract for new products, as Plaintiff claims, or instead is a modification to an existing contract, as Defendant claims. Whether the contract is new or a modification is imperative to determining which of the Plan's provisions applies to the calculation of Plaintiff's commission.

## II.     Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III.　Analysis

As noted above, Plaintiff asserts claims for breach of contract and quantum meruit/unjust enrichment. For the following reasons, the Court finds that Plaintiff has met his burden to raise sufficient evidence to survive this motion for summary judgment regarding his claim for breach of contract, but not as to his quantum meruit/unjust enrichment claim.

4

### A. Breach of Contract

A breach of contract claim requires pleading and proof that: (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). The parties dispute only the third and fourth elements.

Plaintiff alleges that Defendant breached the contract (the Plan) when it paid Plaintiff less than he was owed under the Plan. Plaintiff also alleges that, due to this breach, he sustained damages because his commission was merely 10% of what was allegedly due under the Plan. Defendant disagrees, of course, and claims that it properly calculated the commission based on the plain language of the terms of the Plan.

The parties' disagreement stems from a single issue: whether Hilcorp was an existing client of Intergraph at the time of the Sale. If Hilcorp was an existing client, Defendant argues that certain provisions of the Plan apply, namely Section 1.2, which it contends indicates that Defendant calculated the commission correctly. Yet, if Hilcorp was a new client of Hexagon, different provisions of the Plan apply, namely Section 1.12, which may indicate that Defendant did not calculate the commission correctly.

In a sworn affidavit, Intergraph's Vice President of Global Finance and Operations testifies that because Hilcorp was an existing client at the time of the Sale, the Sale constitutes a modification of the original agreement. (Doc. No. 18-1 at 4). Thus, Defendant alleges, because the Sale was only a modification and not a new contract, any commission earned is calculated based upon the amount exceeding the existing contract amount rather than the entire contract amount.

*See* (*id.*; Doc. No. 18 at 9). Intergraph notes that in "October 2021, Intergraph acquired the "enterprise asset management" ("EAM") business of Infor LLC ("Infor"), which included Infor's contracts with its existing clients, such as Hilcorp." (Doc. No. 18-1 at 3; Doc. No. 18 at 9). Therefore, Defendant claims that the Sale between Hexagon and Hilcorp is a modification of the original deal between Infor and Hilcorp, not a new sale. As such, Defendant maintains, Plaintiff is contractually entitled to commission on the modified amount only. (Doc. No. 18-1 at 5).

On the other hand, Plaintiff's affidavit states that Hilcorp was not an existing client of Intergraph. (Doc. No. 21-1 at 2). Instead, Plaintiff asserts that the Sale agreement between Hilcorp and Hexagon superseded all previous agreements between Infor and Hilcorp. (*Id.*). Moreover, Plaintiff swears that "Infor informed Hexagon that the Hilcorp contract was new and replaced old records between SaaS products and was not eligible for transitional support." (*Id.* at 3). Thus, the Court finds that Plaintiff provided enough evidence to raise an issue of material fact as to whether Hilcorp was a new or existing client of Intergraph at the time of the Sale. A genuine issue of material fact as to whether Hilcorp was a new or existing client of Intergraph necessarily creates a fact issue as to which of the Plan's provisions applies to the calculation of Chambers's commission. Consequently, Plaintiff has also provided sufficient evidence to raise an issue of material fact as to which provision of the plan controls the commission at issue, thus satisfying his summary judgment burden for the fourth element of breach of contract—whether Plaintiff sustained damages due to the alleged breach. Accordingly, the Court finds that Plaintiff has satisfied his summary judgment burden and has raised an issue of material fact as to each element of his claim of breach of contract.

### B. Quantum Meruit/Unjust Enrichment

"A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 384 (5th Cir. 2020) (citing *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)). Unjust enrichment claims are based on quasi-contract and are predicated on the absence of an express contract controlling the circumstances. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683 (Tex. 2000).

As noted above, the parties do not dispute that there is a valid, enforceable contract. (Doc. No. 21 at 4; Doc. No. 18 at 19–20). Plaintiff states that quantum meruit/unjust enrichment was pled in the alternative, "should the Court determine that any agreement between Plaintiff and Defendant is not valid, is illusory, or otherwise not enforceable." (Doc. No. 21 at 9). The Court agrees that the Plan is an enforceable contract that controls the circumstances at issue. Thus, Plaintiff's claim for quantum meruit/unjust enrichment must be dismissed as a matter of law.

### IV. Conclusion

The Court finds that Plaintiff raised an issue of material fact as to each element of its breach of contract claim. For the reasons above, the Court hereby **GRANTS in part** and **DENIES in part** Defendant's Motion for Summary Judgment. (Doc. No. 18). Plaintiff's claim for quantum meruit/unjust enrichment is dismissed. The breach of contract claim remains.

SIGNED at this 26th day of November, 2024.

Andrew S. Hanen
United States District Judge